**SCHENLEY DISTILLERS, Inc. and Joseph S. Finch and Company,**
Plaintiffs,

v.

**John H. BINGLER, United States District Director of Internal Revenue for the Pittsburgh Internal Revenue District,**
Defendant.

Civ. A. No. 14314.

United States District Court
W. D. Pennsylvania.

Oct. 18, 1956.

**518**

Reed, Smith, Shaw & McClay, by Elder W. Marshall, Pittsburgh, Pa., Dewey, Ballantine, Bushby, Palmer & Wood, New York City, by Thomas E. Dewey, Kent B. Luckingbeal, New York City, of counsel, for plaintiffs.

Charles K. Rice, Asst. Atty. Gen., Andrew D. Sharpe, Benjamin H. Pester, Attys., Dept. of Justice, Washington, D. C., D. Malcolm Anderson, Jr., U. S. Atty., Pittsburgh, Pa., for the Government.

Before STALEY, Circuit Judge, and MILLER and McILVAINE, District Judges.

STALEY, Circuit Judge.

This suit in equity was commenced by Schenley Distillers, Inc., a Delaware corporation, and Joseph S. Finch and Company, a Pennsylvania corporation, against John H. Bingler,[1] the United States District Director of Internal Revenue for the Pittsburgh Internal Revenue District. The plaintiffs, who are distillers, owners, or warehousemen of whiskey and other distilled spirits stored in bond in Internal Revenue Bonded Warehouses, and both wholly-owned subsidiaries of Schenley Industries, Inc., requested that the defendant be permanently enjoined from determining or collecting the federal tax on any distilled spirits presently or hereafter in bond, in which they have an interest, unless and until the said distilled spirits shall be voluntarily withdrawn from bond. Because the requested injunctive relief is grounded upon allegations that the threatened collection of federal taxes as provided by an Act of Congress would be repugnant to certain provisions of the Constitution of the United States, the application for relief has been considered, pursuant to statutory requirement, 28 U.S.C. §§ 2282, 2284 (1952) by a three-judge court.

We are presently concerned with the defendant's motion, upon which argument has been heard, that the complaint be dismissed for various reasons. These are that the tax laws attacked are constitutional; that the plaintiffs have an adequate remedy at law; that this court does not have jurisdiction to issue an injunction restraining the collection of the taxes; that the plaintiffs should not be heard to attack the conditions of a statute under which they have obtained and are enjoying privileges; and that the complaint fails to state sufficient facts upon which relief can be granted.

The laws [2] which govern the taxation of distilled spirits and which are rele-

---

1. Bingler was substituted for a former Director who was the original defendant.
2. The pertinent sections of the Internal Revenue Code of 1954 are, 26 U.S.C. §§ 5001, 5002, 5003, 5004, 5005, 5006, 5011, 5173, 5193, 5194, 5231, 5232, 5242, 5302. Similar provisions were in the Internal Revenue Code of 1939.

vant in this case provide that there is "imposed on all distilled spirits * * * produced in * * * the United States an internal revenue tax at the rate of $10.50 on each proof gallon". "The tax shall attach to distilled spirits * * * as soon as this substance is in existence as such * * *." § 5001(a, b). A distiller, however, is not required to pay the tax at the time of the production of distilled spirits. After distillation, the spirits are deposited in locked tanks known as receiving cisterns. Under certain circumstances, however, the spirits are deposited in bonded warehouses for aging and in such circumstances the tax must be paid before the spirits are withdrawn from the warehouses. *In any event, however, the tax must be paid within eight years from the date of the original entry into the warehouse.* The tax, when paid, is paid upon the actual number of gallons in existence, which amount is lower than the amount originally deposited in the warehouse. This is because losses during storage will occur from various causes, such as soakage, leakage, evaporation, casualty, or theft. Under certain specified circumstances, the tax on the spirits is never collectible: if the spirits are voluntarily destroyed, or redistilled, or withdrawn for export.

The plaintiffs, in asking that this court enjoin the collection of the tax on their distilled spirits unless and until they are voluntarily withdrawn from bond, have in effect requested that we enjoin the enforcement of that provision of the law which requires that, regardless of voluntary withdrawal from bond, the tax must be paid within eight years of the deposit in bond.

In considering such interference with the collection of taxes as provided by Congress, we are faced immediately with Section 7421 of the Internal Revenue Code of 1954. That section provides, with certain exceptions that do not concern us, that " * * * no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." To grant plaintiffs' request would clearly restrain the collection of a tax, and thus, if Section 7421 is applicable to this case, we must deny the requested relief.

This provision, which has been in the law for over eighty-five years, reads as though an injunction restraining the collection of taxes is not permitted under any circumstances. There have been situations, however, in which the Supreme Court of the United States has held that provision was not applicable and an injunction was permissible. So far as we have been able to discover, with just one exception, those cases in which the injunctions restraining government officials have been permitted were all cases in which the court held that the purported tax sought to be restrained was in reality not a tax but a penalty, and the Court said that the statutory prohibition did not apply to the collection of penalties. Lipke v. Lederer, 1922, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061; Hill v. Wallace, 1922, 259 U.S. 44, 42 S. Ct. 453, 66 L.Ed. 822; Regal Drug Corp. v. Wardell, 1922, 260 U.S. 386, 93 S.Ct. 152, 67 L.Ed. 318; Mulford v. Smith, 1939, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092; see also Allen v. Regents of University System of Georgia, 1938, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448.

In Hill v. Wallace, 1922, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822, the Court granted an injunction against the collection of taxes and said that an injunction could be granted in a case apparently within the terms of the statutory prohibition if there were present "extraordinary and entirely exceptional circumstances." 259 U.S. at page 62, 42 S.Ct. at page 456. The Court, however, in a later case denying an injunction, in an opinion written by Chief Justice Taft who also wrote the Hill opinion, interpreted the Hill case as one which should in fact be classed as a case involving a penalty in the form of a tax. Graham v. DuPont, 1923, 262 U.S. 234, 257–258, 43 S.Ct. 567, 67 L.Ed. 965. Thus, up to the time of the Graham decision, the cases in which injunctions were permitted involved penalties rather than taxes, although

the Supreme Court had said several times that even the collection of a tax could be enjoined under extraordinary and exceptional circumstances.

Eventually, in Miller v. Standard Nut Margarine Co., 1932, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, a factual situation was presented which warranted an injunction against the collection of taxes even though the tax was not considered a penalty as in prior decisions. In that case, an injunction restraining the imposition and collection of oleomargarine taxes on a product known as "Southern Nut Product" was permitted. The Court stated, 284 U.S. at page 509, 52 S.Ct. at page 263, "in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector." The special and extraordinary circumstances were discussed by the Court, which said:

"* * * A valid oleomargarine tax could by no legal possibility have been assessed against [complainant], and therefore the reasons underlying § [7421] apply, if at all, with little force. LeRoy v. East Saginaw Ry. Co., 18 Mich. 233, 238–239; Kissinger v. Bean, Fed.Cas.No.7,853. [Complainant] commenced business after the product it proposed to make had repeatedly been determined by the Commissioner and adjudged in courts not to be oleomargarine or taxable under the act, and upon the assurance from the Bureau that its product would not be taxed. For more than a year and a half [complainant] sold its product relying upon the aforesaid rulings that it was not subject to tax. If required to pay the tax its loss would be

seven cents per pound. Before the Commissioner's latest ruling, [complainant] had made and sold so much that the tax would have amounted to more than it could pay. [The Commissioner] acquiesced in the injunctions granted [in other cases] and did not assess any tax upon identical products contemporaneously being made by complainants in such suits, and directed enforcement against [this complainant's] entire product. Such discrimination conflicts with the principle underlying the constitutional provision directing that excises laid by Congress shall be uniform throughout the United States. It requires no elaboration of the facts found to show that the enforcement of the act against [complainant] would be arbitrary and oppressive, would destroy its business, ruin it financially and inflict loss for which it would have no remedy at law. It is clear that, by reason of the special and extraordinary facts and circumstances, § [7421] does not apply. The lower courts rightly held [complainant] entitled to the injunction." 284 U.S. at pages 510–511, 52 S.Ct. at page 263.

To our knowledge, the Standard Nut Margarine case is the only case, and no other has been cited by counsel,[3] in which the Supreme Court clearly held that although no penalty was involved, the circumstances were so special and extraordinary as to render inapplicable the statute prohibiting the maintenance of a suit to restrain the collection of taxes.

In the light of the Supreme Court decisions, Section 7421 prohibits the issuance of an injunction in this case, unless either the tax sought to be enjoined is in reality a penalty or the necessary special and extraordinary circum-

---

3. Plaintiffs have said that the principles laid down in the Standard Nut Margarine case were applied in Allen v. Regents, 1938, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448. In the Regents case, however, although the court mentioned "extraor-

dinary circumstances," it specifically held that the assessment and collection sought to be restrained was "not of a tax payable by respondent but of a penalty for failure to collect it from another." 304 U.S. at page 449, 58 S.Ct. at page 984.

stances are present. Certainly, the tax on distilled spirits is not a penalty. United States v. Rizzo, 1936, 297 U.S. 530, 533, 56 S.Ct. 580, 80 L.Ed. 844. Thus, this court has jurisdiction to issue the requested injunction only if the requisite special and extraordinary circumstances are presented, in addition, of course, to the illegality of the exaction, with which we need not now concern ourselves.

The complaint in this suit is very lengthy, covering thirty-nine printed pages, most of which are devoted to facts concerning the entire distilled-spirits industry and the internal revenue laws applicable to the industry presently and historically. The factual allegations which specifically concern the plaintiffs are not many. The facts which follow are taken from the complaint and the submitted affidavits.

Because of the necessity for aging, distilled spirits are not marketed at the time of distillation but in later years. The industry, therefore, must estimate its needs in relation to the expected demands in the future. The requirement of the law that the tax on distilled spirits be paid within a certain time after deposit in warehouses has been in effect for many years although the time limits on payment have varied. Except for recent years, this time limitation was not of significant practical concern to the industry because it was always able to market its aged spirits before the deadline for payment of the taxes arrived.

In recent years, however, the industry has not been able to market its aged spirits before the eight-year tax payment deadline. It has had on hand millions of gallons of spirits upon which the tax became due but for which there was no market. The result has been an economic squeeze, resulting in financial losses. In some cases where the tax was paid, the industry, because of acute financial reasons, had to dump the spirits on the market and attempt to recoup what it had paid the government, and in doing so it had to forego profits and even suffer losses on its investment in the spirits.

In other cases rather than pay the tax, the industry has chosen to destroy, redistill, or export the aged spirits. But whichever course of action was followed, losses were suffered.

This situation will continue in the future since the tax payment deadline will be reached in the next several years on more spirits than can be profitably marketed.

Generally, plaintiffs claim that, along with the other members of the distilled-spirits industry, they face the dim prospect of severe economic loss in the future because of the fact that taxes must be paid on eight-year-old spirits whether or not a market exists. The relevant specific facts as to these plaintiffs is, of course, our important concern since they and not the industry are parties to this suit, and it is as to them that "special and extraordinary circumstances" must be found to exist.

As to the Joseph S. Finch Company, we know that during the first six months of 1956, almost one-quarter of its inventory which reached the eight-year deadline during that period was redistilled to escape the tax. Because of this, the loss suffered on 300,000 gallons of whiskey was about $500,000. Finch currently owns the remainder, after storage losses, of more than 25,000,000 original proof gallons of distilled spirits in the Pittsburgh Internal Revenue District. The number of remaining proof gallons owned by Finch which will reach the age of eight years in bond in the future and for which we have figures are as follows: In the last half of 1956—1,650,000 gallons; 1957—2,558,000 gallons; 1958—4,213,000 gallons; and 1959—1,657,000 gallons. Finch will not have a normal market for all of these spirits at the time the tax is due, and so will have to decide whether to pay the tax and hold the spirits for an uncertain market or avoid the tax by destruction, redistillation, or exportation of the spirits.

So far as Schenley Distillers, Inc., is concerned, about all we know is that it is liable on a surety bond valued at $200,-

000 given to the government to guarantee payment of the tax on any distilled spirits deposited in one of the warehouses in the Pittsburgh Internal Revenue District, of which Schenley is the proprietor.

In the light of the above facts, we must determine whether either Schenley or Finch has shown that "special and extraordinary circumstances" exist as to it, sufficient to permit the issuance of an injunction.

■ As we have said above, Schenley's only interest and concern is that it might become liable on its surety bond of $200,000 if the tax on any distilled spirits deposited in the warehouse of which it is the proprietor is not paid as the law provides. There is no allegation that Schenley itself owns any distilled spirits. If the defendant is not enjoined from collecting taxes at the end of the eight-year period, Schenley might, in the future, have to make good if some owner of distilled spirits in Schenley's warehouse does not pay the tax due or take the permissible steps to avoid it. There is no allegation that there is any immediate threat that this will happen. We can speculate that it might, but that is hardly enough to warrant equitable interference in the collection of taxes.

Finch has argued that there do exist special and extraordinary circumstances which entitle it to equitable relief.

■ The basis for this contention is that an injunction is the only remedy which will protect it from irreparable harm. We think, however, that the facts which have been presented to us are insufficient to warrant that conclusion. First of all, Finch has a remedy at law to test the constitutionality of the provision requiring payment of the tax within eight years. It can pay the tax at the end of eight years and sue for a refund.

Although we are told the number of gallons Finch owns which will reach the eight-year date in the next several years, we do not know what percentage of those amounts will be marketable and what percentage will not. We do know that in the first six months of 1956, one-quarter of Finch's eight-year-old spirits was redistilled. That percentage may or may not represent the total unmarketable eight-year spirits in that period. That percentage may or may not be indicative of how much of Finch's future eight-year inventory will be unmarketable. But, whatever the percentage of total inventory that will be unmarketable in the next several years, there are no facts alleged to support a conclusion that Finch will be financially unable to pay all the taxes as they become due, whether or not the spirits are marketable. Whatever financial statistics we have been given as to the total industry do not, of course, concern Finch. It simply cannot be said as to Finch on the facts before us that it could not afford to pay its taxes when due and sue for a refund even though there was no market for some of its spirits, for we know nothing of its anticipated sales in relation to its inventories, nor of its financial resources. There are no facts alleged to indicate that Finch could not afford to pay taxes and hold the spirits until the determination of its action at law.

If the collection of the tax at the eight-year period is held to be unconstitutional, Finch would recover its taxes paid and still have its spirits. The tax would then again be paid only when the spirits would be voluntarily withdrawn from bond and only upon the spirits remaining. We see no substantial difference between the situation thus described and the situation which would obtain if equity were to intervene and grant the relief sought by issuing a permanent injunction.

Finch claims, however, that it also runs the risk that if the tax be held constitutional in a suit for refund and Finch then has on hand unmarketable spirits upon which it has paid taxes, it would suffer greater loss than if it had chosen to destroy, redistill, or export the spirits rather than pay taxes. Such losses, it says, would be irreparable. This may be so, but the losses would result from

Finch's own choice of a course of action permitted to it under the law. In effect, we are asked to extend equitable relief to enable Finch to avoid harm which would be caused not by any illegal or unconstitutional act of the defendant, but caused by plaintiff's own course of conduct. In such circumstances, equity will not act, as before harm to the defendant can be considered in determining the adequacy or inadequacy of a legal remedy, it must clearly appear that the source of the harm is the wrongful act of the defendant. See Parker v. Winnipiseogee Lake Cotton & Woollen Co., 1862, 2 Black. 545, 551, 17 L.Ed. 333; Coty v. Prestonettes, Inc., 2 Cir., 1922, 285 F. 501, 514; 43 C.J.S., Injunctions, § 19(a).

Plaintiffs have already instituted suits for refunds of taxes exacted under the eight-year provision of the law, in which suits, among other questions, they have raised the constitutionality of the eight-year provision. They allege, however, that the suits will not permit a determination of the constitutionality of the law as speedily as this proceeding. But if this were reason for considering the remedy at law inadequate, Section 7421 of the Internal Revenue Code of 1954 would become meaningless And in this case especially, we should not consider the relative speed of the two proceedings because plaintiffs knew as early as 1952 of the imminency of the problem of excess supply over demand of eight-year-old spirits and could have filed refund claims at that time, yet they waited until the latter part of 1955 to file their first claim for refund. No reason for plaintiffs' inaction has been advanced. We are told merely that the delay was due to hope for Congressional relief.

This court is of the opinion that the facts of this case are not of such "special and extraordinary circumstances" as moved the Supreme Court to grant the injunction in the Standard Nut Margarine case. The facts are not such as to bring the plaintiffs under any acknowledged head of equity jurisprudence,

as required in that case. For this reason, because of Section 7421, we cannot maintain this suit to restrain the collection of the federal taxes.

The complaint will be dismissed.