UNITED STATES

v.

SHERWOOD DISTILLING CO., Inc., Aetna Casualty & Surety Company.

Civ. A. No. 10538.

United States District Court
D. Maryland.

Oct. 8, 1964.

Joseph D. Tydings, U. S. Atty., and Stephen H. Sachs, Asst. U. S. Atty., Baltimore, Md., for the United States.

P. C. King, Jr., Washington, D. C., William B. Kempton, Barton, Wilmer, Bramble & Penniman, Baltimore, Md., for defendant and cross-claimant Aetna Cas. & Sur. Co., Inc.

L. Awalt Weller, Westminster, Md., John F. King, Anderson, Coe & King, Baltimore, Md., for defendant and cross-defendant Sherwood Distilling Co., Inc.

R. DORSEY WATKINS, District Judge.

This action was brought by the United States against Sherwood Distilling Company, Inc. (Sherwood), as distiller, for recovery of $263,896.50 for distilled spirits taxes, and against Aetna Casualty & Surety Company (Aetna) for recovery of $200,000, the principal amount of a transportation and warehousing bond, given to secure the payment of said taxes. The bond, on which Sherwood was principal and Aetna was surety, covered Sherwood's operation of an internal revenue bonded warehouse located in Westminster, Maryland. Aetna answered the complaint and pursuant to Rule 13(g) of the Federal Rules of Civil Procedure cross-claimed against Sherwood, in part, for any sums which it might be required to pay to the United States under the bond sued upon. Sherwood answered the complaint and cross-claim. Meanwhile the spirits on which the taxes were due were sold and the proceeds, after paying expenses of the sales, were applied to the taxes due.

Shortly thereafter payment in full of the balance of the tax due, penalties and interest, was made to the United States by Aetna. An order was signed, with consent of counsel, dismissing the complaint with prejudice and retaining Aetna's cross-claim against Sherwood for such further proceedings as might be appropriate. As of that time, [June 6, 1960] Aetna had paid $159,535.57 to the United States, Sherwood had reimbursed Aetna to the extent of $5,000.00, and Aetna moved for summary judgment in the amount of $154,535.57. The motion was denied on the ground that there existed genuine issues as to material facts.

Thereafter, pursuant to Rule 15(d) of the Federal Rules of Civil Procedure, Aetna asked leave to file a supplemental cross-claim against Sherwood. The proposed supplemental cross-claim alleged:

"1. In May, 1941, this defendant and cross claimant reinsured a portion of its liability on the bond attached as Exhibit I to plaintiff's complaint with New Amsterdam Casualty Company for $40,000.00, Fidelity and Deposit Company of Maryland for $40,000.00. The Fidelity and Casualty Company of New York for $40,000.00 and Hartford Accident and Indemnity Company for $40,000.00.

"2. In February 1961, subsequent to the date of the original cross claim herein, New Amsterdam Casualty Company, Fidelity and Deposit Company of New York and Hartford Accident and Indemnity Company assigned in trust to this defendant all their right, title, and interest in their contracts of reinsurance with respect to the said bond, including all rights of action for indemnity or otherwise growing out of said bond."

Sherwood opposed Aetna's motion for leave to file a supplemental cross-claim on five grounds; (1) that the supplemental cross-claim presents claims contrary in theory to the theory of the original cross-claim, (2) that the motion was filed too late, (3) that the issues of law and fact in the cases of the four reinsurers are different from those raised in Aetna's original cross-claim thereby substantially prejudicing Sherwood should the supplemental cross-claim be filed, (4) that the

supplemental cross-claim is not in proper form and (5) that the four corporate reinsurers are the real parties in interest for their respective payments and must assert them directly against Sherwood.

The court permitted the filing of the supplemental cross-claim. It has now been asked to reconsider this ruling. Four of the grounds of objection may be disposed of summarily. Ground number five only will require any extended discussion.

■ (1) The cause of action asserted by Aetna in its supplemental complaint is no different. from that asserted in its original complaint [1] as it originally sought recovery for the entire amount paid by it or which it might have to pay to the United States and now seeks recovery of the same amount for the same reasons but, to the extent of 80 per cent of the original liability under the bond, as trustee for the insuring corporations. Indemnification remains the cause of action throughout. What Sherwood really opposed was granting Aetna leave to prosecute its original cross-claim individually and, by supplemenal cross-claim, in a representative capacity as trustee for its reinsurers. This ground of objection is but a restatement in a slightly different form of objection number five and will be fully treated in the portion of this opinion dealing with that objection.

■ ■ (2) The motion for leave to file a supplemental cross complaint, while filed almost three years after the original cross complaint, shows on its face that it was filed one month after the subsequent transactions in question, i. e., the assignments in trust by the four reinsurers to Aetna of all their right, title and interest in their contracts of rein-

surance with respect to the transportation and warehousing bond in question. Counsel for Sherwood admitted that any defense of laches or limitations as to the original cross-claim must await a trial on the merits.[2] Limitations, even when available as a defense, not being favored,[3] ground number two of objection was overruled.

■ (3) Objection number three is also in fact a rehash of the true bone of contention in these proceedings—which corporation is or which corporations are the real parties in interest. The issues of law and fact in the case of the four reinsurers cannot be different from those raised in Aetna's original cross-claim as the reinsurers are not parties litigant in this case and therefore no claims have been asserted by, or defenses raised against, them. Any defenses available against the reinsurers were they parties to this suit could presumably be raised in this suit against Aetna in its representative capacity as trustee were leave granted to file the supplemental cross-claim.

■ ■ (4) While it might have been desirable as claimed by Sherwood that Aetna set forth more specific details as to each of the four assignments and attach them as exhibits, such a procedure is not an absolute requirement. Nor does the fact that the supplemental cross-claim does not allege payment by the reinsurers to Aetna within twelve months of final settlement of Aetna's obligation under the bond affect the proposed supplemental cross-claim should leave otherwise be granted to permit its filing, and the fact of such payments was later established by uncontradicted evidence.

(5) In pressing its motion for leave to file a supplemental cross-claim against Sherwood, Aetna has taken the anom-

---

1. For cases discussing whether or not a cause of action is changed by subsequent pleadings, see: Doughty v. Prettyman, 1959, 219 Md. 83, 89–93, 148 A.2d 438 —theory of recovery negligence throughout; Cline v. Fountain Rock Lime and Brick Co., Inc., 1957, 214 Md. 251, 134 A.2d 304—theory of recovery under oral lease change to allegation of liability due to a joint adventure.

2. Page 11—Sherwood's memorandum in opposition to Aetna's motion for summary judgment.

3. Farmers' Bank of Maryland v. Sprigg, 1857, 11 Md. 389.

alous, and completely inconsistent, position that the assignments in trust, the sole subject matter of the proposed supplemental cross-claim,[4] were not and are not necessary to enable it to prosecute the entire claim on behalf of itself and its reinsurers.

Rule 17(a), F.R.Civ.P., 28 U.S.C.A. provides:

> "Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; * * *."

The leading case construing this rule is United States v. Aetna Casualty and Surety Company, 1949, 338 U.S. 366, pages 380–381, 70 S.Ct. 207, page 215, 94 L.Ed. 171 in which it was said:

> " 'Every action shall be prosecuted in the name of the real party in interest,' and of course an insurer-subrogee, who has substantive equitable rights, qualifies as such. If the subrogee has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name. 3 Moore, Federal Practice (2d Ed.) p. 1339. If it has paid only part of the loss, both the insured and insurer (and other insurers, if any, who have also paid portions of the loss) have substantive rights against the tortfeasor which qualify them as real parties in interest."

It is this language which is worrying Aetna and has occasioned the express transfers of all interest of the four reinsurers under their contracts of reinsurance to Aetna. One of the corporate reinsurers being a Maryland corporation, were its joinder necessary, there would be no diversity of citizenship between it and Sherwood and the jurisdiction of this court would thereby be destroyed. Hence, the question has been raised as to whether or not the transfer or transfers to Aetna by the reinsurers were for the purpose of conferring jurisdiction upon this court and thus were ineffective to do so.

The answer to this question is that Sherwood's objection to Aetna's status as a real party in interest is based upon a supposed transfer of Aetna's interest to the reinsurers *subsequent* to the commencement of this action. It should be recalled that this suit was brought by the United States against Sherwood and Aetna to recover on a bond for the payment of alcohol taxes to the full extent of the bond coverage. The cross-claim by Aetna against Sherwood was for the full amount that Aetna might have to pay to the United States. Payments by Aetna were made after this court's jurisdiction had vested over the main suit and the cross-claim. At the time of the filing of the cross-claim, as well as at the time of each payment by Aetna to the United States, Aetna was clearly the real party in interest with respect to each such payment. The payments by the reinsurers occurring later do not oust the court's jurisdiction. The only possible relevance of the payments by the reinsurers would be as to the amount recoverable by Aetna.[5]

In pressing its contention that it is the sole party in interest, Aetna states in its memorandum in support of its motion for leave to file a supplemental cross-claim against defendant Sherwood:

> "The reinsurance arrangement in the surety business, embodied in the Standard Form of Reinsurance

---

4. It should be noted that paragraph one of the proposed supplemental cross-claim relates to transactions occurring twenty-one years previously and accordingly is not appropriate subject matter to be set forth in a *supplemental* cross-claim.

5. Rule 17 is a Court-made rule; the Federal Rules do not enlarge or diminish Federal jurisdiction. (United States v. Sherwood, 1941, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058). They do deal rather freely and extensively with parties.

Agreement, is of a very different pattern. We know of no cases or other authorities considering the applicability of the real party in interest rule to this type of reinsurance arrangement, or for that matter, to reinsurance in general. Paragraph 14 of the Standard Form of Reinsurance Agreement, which was executed by the Aetna and all four of its reinsurers, provides that *the reinsurer shall share in any security or right of action held by the reinsured* and in any recovery achieved by the reinsured. But the reinsured is authorized to take action on behalf of the reinsurers as well as itself in the following language:

> " 'The reinsured is hereby authorized to appropriate at any time all or any part of the share of the Reinsurer in all such collateral security, as well as the proceeds thereof, rights of action, and of all salvage or recovery  *  * ' "
> (Emphasis supplied).

This paragraph read as an entirety is at best oblique and does not "clearly" support the conclusion stated in Aetna's memorandum that "the parties to the reinsurance agreement do not contemplate that any proceedings involving these large risks should be fragmented and processed separately by however many surety companies may be involved."

■ Aetna also relies upon paragraph nine of the Standard Form of Reinsurance Agreement where management of claim matters is given to the reinsured, the reinsured acting on behalf of the reinsurers as well as itself, so that the reinsurers are bound by the reinsured's action. This reliance is unfounded as paragraph nine obviously relates to the management of claims of third parties against reinsured and does not relate to any reciprocal rights between reinsured and reinsurer.

■ The granting or refusing of leave to file a supplemental pleading rests in the sound discretion of the trial court (Schuckman v. Rubenstein, 6 Cir. 1947, 164 F.2d 952, cert. den. 1948, 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151; United Exhibitors v. Twentieth Century Fox Film Corp., D.C.D.Pa.1956, 18 F.R.D. 469).

■ Should the present case not be distinguishable from the usual subrogation case—Aetna arguing that the rights arising out of reinsurance contracts are different from those arising in the usual subrogation case—and should therefore the principle announced in United States v. Aetna Casualty and Surety Company apply, at the most the reinsurers would be necessary parties but clearly not indispensable parties (338 U.S. at 382, 70 S.Ct. at 216). Thus, in exercising its discretion in the present case the court considered the evil of an attempt by way of assignment to avoid proper joinder of necessary parties and in view of Aetna's repeated contention that it is the real and sole party in interest to bring this suit for the full amount paid to the United States, the court has concluded that either the assignments in trust were not necessary to enable Aetna to prosecute this suit or that they are assignments for the purpose of avoiding proper joinder and thus invalid. Under either alternative, the allegations of the supplemental cross-claim are immaterial to this suit.

The court will now turn to a consideration of the merits of the case.

### Background.

Effective May 1, 1941, Aetna issued a "continuing" bond, with annual premiums of $750.00 conditioned upon the payment of the tax, with interest and penalties, on all distilled spirits deposited at Sherwood's Registered Distillery No. 12, Maryland, within eight years from their date of entry, and on all distilled spirits in transit. Aetna was also surety on a similar bond for Foust Distilling Company, Inc., at Glen Rock, Pennsylvania. Both Sherwood and Foust were controlled by Louis Mann.

About 1949, Sherwood issued to a trustee duplicate warehouse receipts for much of the whiskey in storage in its Maryland warehouse. Through the fraud of

the trustee, warehouse receipts were pledged to various banks as security, with the result that a large part of the stored whiskey was subject to conflicting claims.[6] On March 15, 1951, Peoples First National Bank and Trust Company, Pittsburgh, Pennsylvania, holder of one set of warehouse receipts, recovered judgment against Sherwood in the amount of $694,000. On March 4, 1952, the Reconstruction Finance Corporation obtained a judgment against Foust in the amount of $79,019.71 (later reduced to eliminate treble damages and counsel fees). Neither judgment has ever been paid.

In some manner Aetna obtained copies of a preliminary statement of Financial Condition and Profit and Loss, dated March 25, 1952, prepared by certified public accountants for Sherwood management for the year ending December 31, 1951, indicating a deficit of over $700,000. The final financial statement showed a net worth of approximately, $575,000. "Market values" of the Sherwood inventory varied from $1,500,000 to $1,200,000 in 1952; the O.P.A. ceiling price as of October 3, 1951 being $1,960,-000. These, even if accurate, were book figures, since Sherwood would have been forced to pay excise taxes, which it could not do, to release this whiskey; and in fact, the post-Korean market would not absorb it even at the increased excise tax of $10.50 a gallon, apart from any appreciable profit.

On April 2, 1952, Aetna gave notice of termination of liability on the bond, effective June 5, 1952. At that time there was a considerable quantity of whiskey in the Sherwood warehouse, much either owned or claimed by outsiders (including Mann's wife), distilled in 1945, 1946 and 1947, upon which assessments were made in 1954 and 1955. As of April 2, 1952, the potential liability due the United States on whiskey already in bonded warehouses if and when assessed at the

end of the eight-year force-out storage period substantially exceeded the maximum liability of $200,000 on the Sherwood and Foust bonds.

Shortly after the cancellation of the bond, Sherwood began a series of requests to Aetna to reinstate the bond, or to consent to various plans for the transfer of spirits between Sherwood and Foust, to which Aetna declined to accede.

In early 1958, Sherwood attempted to arrange for exporting the Sherwood whiskey to Nicaragua, to reduce losses by obtaining the benefit provisions of the revenue laws. None of the various proposals was effected.

On July 25, 1957, Aetna, Sherwood, the United States and the two banks principally interested in the spirits executed an agreement providing for the sale of the spirits, and application of the proceeds of such sales to the taxes due; without prejudice to the rights of the respective parties "which may hereafter accrue by reason of legislation, regulation or judicial determination that such payments need not or should not have been made in the first place."

The parties are in agreement that if Aetna properly paid the debt of its principal, Sherwood, Aetna is entitled to indemnity. The decision therefore turns upon the validity of the affirmative defenses raised by Sherwood.

### Affirmative Defenses.

#### 1. Cancellation.

Sherwood contends that Aetna's right to terminate the bond was not an absolute right, but could be exercised only upon reasonable grounds, which did not exist; that the purported cancellation was arbitrary, unreasonable, and capricious, causing Sherwood great injury, preventing it from continuing in business, thereby preventing it from selling

---

6. Mr. Mann was the victim of circumstances. The trustee-broker in question had faithfully represented Mann for a number of years. Moreover, as will hereafter appear, Mann was likewise the victim of Federal legislation requiring the payment of taxes when liquor became eight years of age, and also of an increase in excise taxes.

the whiskey and paying taxes in 1952–1953 before assessment.

■ The bond in question, a "continuing" one, contains no express provision for, or against, cancellation or termination. It would therefore appear to be one terminable at the will of either principal or surety; subject, of course, as to the surety to liability accrued as of the time of termination. The right of a surety on such a bond to terminate it at any time seems specifically recognized in and authorized by the applicable Treasury regulations.

"A surety on any bond required by this part may at any time in writing notify the principal and the district supervisor in whose office the bond is on file that he desires, after a date named, which shall be at least 60 days after the date of notification, to be relieved of liability under said bond." Regulations 10, Sec. 185.340, 15 F.R. 5233, 5262 (1950).

In a companion case, involving identical principles, United States v. Foust Distilling Co. and Aetna Casualty & Surety Co., 1960, M.D.Pa., 36 F.R.D. 92, Judge Follmer said:

"Aetna was completely within its rights in withdrawing the bond in accordance with the provisions of the Regulations of the Bureau of Internal Revenue above set forth." Opinion, 36 F.R.D. page 95.

See also Continental Casualty Co. v. United States, 7 Cir. 1934, 68 F.2d 577, 580, cert. den. 1934, 292 U.S. 641, 54 S.Ct. 774, 78 L.Ed. 1493, reh. den. 1934, 292 U.S. 615, 54 S.Ct. 862, 78 L.Ed. 1474.

■ However, even if reasonable cause were required for termination, the court finds that such reasonable cause existed. Sherwood's involvement in duplicate certificates was known, as was the improbability of Sherwood being able to dispose of its inventory. The practicalities of the situation are, however, demonstrated by the very argument advanced by Sherwood against cancellation, that:

"There was no possibility of obtaining a new surety bond under these circumstances, and in fact none was ever obtained * * *"[7]

It can scarcely be said to be an arbitrary action to cancel a bond that nobody else would be willing to write.

2. Aetna's refusal to give a consent of surety.

This defense relates to numerous requests by Mann to Aetna to execute a consent to the removal of distilled spirits from the Sherwood bonded warehouse to the Foust bonded warehouse. Sherwood contends that such removal, before the assessment of taxes upon the expiration of the eight year period, would have eliminated any liability with respect to the Sherwood spirits. Foust, controlled by Mann, would (we may assume for the purpose of this discussion) have accepted such transfer.[8]

---

7. Sherwood's Brief after trial, page 25.

8. Sherwood points out that other bonded warehouses probably would not have been receptive, because of market conditions, feelingly set forth in a footnote to Sherwood's brief, page 27.

"There has been a substantial overproduction of whiskey because of the Korean 'police action,' as the distillers anticipated restrictions on distilling imposed by law because of the hostilities, which restrictions did not come to pass. Congress neglected to extend the payout period of 8 years and caused the great decline in the price of whiskey until the whiskey could be sold only for—or less than—the tax of $10.50. There was also an unexpected increase in the tax from $9.00 per gallon to $10.50 per gallon which further aggravated the situation. After the damage was done, Congress extended the pay-out period to 12 years! As only the very large distilleries had the capital to purchase such large quantities of whiskey even at the depressed price and to pay the taxes on their own distilled spirits at the end of the 8 year period, they ended up with a large part of the distilled spirits and most of the small, independent distilleries. The Department of Justice then felt obligated

Sherwood insisted that such transfer would relieve Aetna of any liability on its Sherwood bond, and Aetna contended that it might result in an increase in liability (apparently upon the basis that this might in effect constitute a new bond).

In support of its position, Sherwood offered in evidence correspondence with the Assistant District Commissioner, Baltimore, Maryland. This at the best, from Sherwood's viewpoint, is ambiguous. Even if it did support, or tend to support, Sherwood's claim, the court would consider it to be ineffective, inasmuch as Aetna's liability on the bond of a distiller is fixed by the production of distilled spirits produced by the principal, regardless of where produced or stored (Internal Revenue Code of 1939, Sec. 2800(d), 53 Stat. 1, 298; Internal Revenue Code of 1954, Sec. 5005, 68A Stat. 1, 599).

Moreover, Aetna believed, with at least some reason, that (a) its lien at Sherwood (Westminster, Maryland) was superior with respect to the whiskey in question than it would be at Foust; (b) that the Sherwood assets were more valuable than the Foust assets; and (c) that as the reinsurers on the Sherwood and Foust bonds were different, Aetna was not free to choose between possible conflicts of interest.

The court finds as a fact and concludes as a matter of law that Aetna's refusal to execute a "Consent of Surety" was justified.

3. Nicaragua Export Transaction.

This rather involved subject was covered fully in the trial and on oral argument, but is almost abandoned by Sherwood in its brief.

The Republic of Nicaragua was willing to post bond for the exportation of the Sherwood whiskey. After some apparent vacillation, this was unsatisfactory to the

to prosecute these distilleries for alleged violations of the anti-trust laws, caused almost entirely by the arbitrary

United States, which required that Aetna put up a bond of $124,000 against "drawbacks." This Aetna was unwilling to do, reasonably fearing that under Section 5012 of the Internal Revenue Code of 1954, 68A Stat. 1, 605, such liquor would be considered as tax paid, and subject to attachment by Sherwood's other creditors en route from the distillery to the point of embarkation.

Right or wrong in its conclusion, Aetna certainly breached no duty to Sherwood.

4. Aetna's payments were gratuitous and voluntary, and were paid without an adjudication of the defenses against the United States asserted by Aetna in its answer.

Payment after suit can scarcely be classed as voluntary.

The balance of this defense is based upon defenses in Aetna's answer, to the complaint filed by the United States, that the taxes in question were invalid in that (1) the tax levied was not an excise tax, but a direct or property tax not apportioned as required by the Constitution of the United States; (2) the owners of the distilled spirits were required to destroy their property to avoid the tax; (3) the taxes deprived the owners of their property without due process of law; and (4) the increase from $9.00 to $10.50 per gallon was invalid.

Apart from the fact that Sherwood raised the same defenses in its answer to the complaint filed by the United States and could have insisted that they be fought out, these contentions were decided, and in this court's opinion correctly decided, adversely to Sherwood (and Aetna) in Schenley Distillers v. Bingler, W.D.Pa.1956, 145 F.Supp. 517, aff'd. per curiam 1957, 353 U.S. 933, 77 S.Ct. 811, 1 L.Ed.2d 756; Schenley Distillers v. United States, W.D.Pa.1957, 153 F.Supp. 898, aff'd. 3 Cir. 1958, 255 F.2d 334, cert. den. 1958, 358 U.S. 835, 79 S.Ct. 57, 3 L.Ed.2d 72.

and unreasonable policies pursued by the Government, itself."

The foregoing embodies the court's findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a). To the extent that the proposed findings, submitted by the parties hereto, are not incorporated, they are to be deemed to have been refused.

The Clerk is directed to enter judgment in favor of Aetna against Sherwood in the amount of $154,535.57, with interest from October 23, 1959, and costs.